UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SOUTH BEACH SECURITIES, INC., | ) |
| | ) Case No. 05 B 16679 |
| | ) |
| Debtor. | ) |
| | ) Hon. A. Benjamin Goldgar |
| | ) United States Bankruptcy Judge |
| | ) |
| | ) Hearing Date: August 22, 2005 |
| | ) Time: 10:00 a.m. |

| | |
|---|---|
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| NOLA, L.L.C, | ) |
| | ) Case No. 05 B 16682 |
| Debtor. | ) |
| | ) Hon. A. Benjamin Goldgar |
| | ) United States Bankruptcy Judge |
| | ) |
| | ) Hearing Date: August 22, 2005 |
| | ) Time: 10:00 a.m. |

## CONSOLIDATED MEMORANDUM OF NOLA, L.L.C. AND SOUTH BEACH SECURITIES, INC. REGARDING THE GOOD FAITH FILING REQUIREMENT

NOLA, LLC ("**NOLA**") and South Beach Securities, Inc. ("**South Beach**" which together with NOLA shall be collectively referred to as the "**Debtors**"), by and through their proposed attorneys, submit this memorandum in response to the Court's order dated July 27, 2005, which made a preliminary finding that the Debtor's cases should be dismissed pursuant to 11 U.S.C. § 1112(b) of Title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "**Bankruptcy Code**"). In response, the Debtors state dismissal is not warranted for the reasons stated herein:

/295005.v 1 90068/001

## INTRODUCTION

At the status hearing on July 27, 2005, the Court, sua sponte, raised the issue as to whether the Debtors' respective bankruptcy filings constituted a "valid bankruptcy purpose." The Court made a preliminary finding that these cases should be dismissed pursuant to § 1112(b) of the Bankruptcy Code and asked the parties to submit memoranda in response to the Court's inquiry. The Court questioned whether the Debtors have met the "good faith filing requirement" which the majority of courts have read into § 1112(b) of the Bankruptcy Code. In response, the Debtors submit this joint memorandum demonstrating that they meet the requirements of a good faith filing analyzed and set forth by Judge Wedoff in *In re N.R. Guaranteed Retirement, Inc.*, 112 B.R. 263, 270 (Bankr. N.D. Ill. 1990).

## FACTS

These cases were filed on April 27, 2005. The exclusive period within which to file the Debtors' respective plans of reorganization expires on or about August 24, 2005.

South Beach is a Mississippi corporation formed in 1984 and a wholly-owned subsidiary of NOLA[1]. South Beach's only assets are certain Net Operating Losses ("**NOLs**") arising from or relating to the acquisition of the stock of Health Risk Management, Inc. ("**HRM**"), its claim against NOLA,[2] and a *de minimus* interest in the stock Movie Star, Inc.[3] South Beach owes Scattered Corp.,[4] its only creditor, $3,297,489,

---

[1] NOLA is an Illinois limited liability company formed in 1994 and is owned by Robert Jahelka, James Nichols and Leon Greenblatt II. NOLA is managed by Teletec Systems, Inc., an Illinois corporation wholly owned by Estate of H. Gary Metzger.

[2] South Beach waived its $3,297,489 claim against NOLA for the purposes of this bankruptcy case.

[3] South Beach owns 10,000 shares of Movie Star, Inc., which is valued at approximately $8,000.

[4] Scattered Corp. is a South Dakota corporation owned by Andrew Jahelka, Richard Nichols and Leon Greenblatt III, the respective sons of Robert Jahelka, James Nichols and Leon Greenblatt II.

which was borrowed under the terms of a note approved by the NASD, which regulated South Beach, during the time it was a registered securities dealer, registered pursuant to the Securities Exchange Act of 1934. South Beach loaned its capital to NOLA for the purchase of HRM stock. The note was entered into years before the HRM transaction was initiated.

HRM was in the business of providing health care management services and operated health care plans in Pennsylvania through a wholly owned subsidiary. In early 2001, NOLA acquired the HRM stock when it was trading between approximately $6.50 and $10.50 per share. On or about May 18, 2001, the auditor of HRM, Ernst & Young ("E&Y"), recommended that the company increase the reserve for medical services payable at December 31, 2000, and March 31, 2001, by a total of $5 million, even though E&Y had previously released its audit report certifying to the accuracy of the 2000 year-end HRM financial statements just days earlier. As a result, the value and continued viability of HRM was challenged.

E&Y resigned as the auditor of HRM. On May 21, 2001, E&Y notified HRM that its audit report certifying to the accuracy of the 2000 year-end HRM financial statements could no longer be used. NASDAQ halted trading in HRM shortly thereafter, and HRM shares soon became worthless, including the shares NOLA had acquired. On August 7, 2001, HRM filed a voluntary petition for relief and the case is captioned *In re Health Risk Management, Inc.*, Case No. 01-43354 (Bankr. D. Minn. August 7, 2001) (Kressel, J.).

The stock of HRM was one of NOLA's significant assets. As a result of HRM's and E&Y's fraud, NOLA's interest in HRM became worthless. Consequently, NOLA's ability to repay South Beach and, in turn, South Beach's ability to repay Scattered, was significantly

3

undermined. The only other source with which to compensate Scattered Corp. is South Beach's NOLs. However, the liquidation of this asset has limitations.

The value of South Beach's NOLs can only be preserved for the benefit of creditors through a plan of reorganization. Outside of bankruptcy, NOLs are often lost when a company is sold, because the sale results in a change of ownership of more than 50%. *See* 26 U.S.C. § 172. The Internal Revenue Code has an exception, however, which allows the preservation of NOLs where ownership is transferred to creditors under a chapter 11 plan. *Id.* at § 382. Therefore, the only means by which Scattered can recover the NOLs is through the plan. The draft plan preserves the benefit of the NOLs for the Reorganized South Beach and its equity holder. *See* Exhibit A.

Scattered Corp. demands that South Beach take the necessary steps to confirm a plan of reorganization, and has informed South Beach that it will vote in favor of a plan substantially similar to the one attached as Exhibit A. Therefore, not only has South Beach demonstrated that it has a plan, it has shown that its only creditor, Scattered Corp., has consented to confirmation of such a plan.

As to NOLA, it has informed the Court that it will use § 363 of the Bankruptcy Code to sell all of NOLA's remaining assets to the highest bidder. The proceeds will then bedistributed to its creditors pursuant to a liquidating plan of reorganization. Alternatively, NOLA could seek dismissal of the bankruptcy proceeding after the sale, or conversion of the case to one under Chapter 7 of the Bankruptcy Code. NOLA expects that the distribution to its creditors will be less than 1¢ on each $1.00 claimed.

Unlike South Beach, NOLA has a number of creditors. The majority of these creditors' claims also arise out of or relate to NOLA's acquisition of the now worthless HRM

4

stock. Wachovia Securities, LLC ("**Wachovia**") contends that it is owed approximately $2.3 million relating to NOLA's alleged failure to meet a margin call. This issue has been fully presented to a NYSE arbitration proceeding. Recently, the Court granted Wachovia's request to modify the stay so that the NYSE arbitration panel can enter a finding in the arbitration.

## ANALYSIS

### A.   The confused state of the "bad faith filing requirement" under current law requires a careful analysis of the facts.

The good faith filing requirement remains one of the most elusive concepts in Chapter 11. Courts have, in some instances, taken on a sort of "I'll know it when I see it" approach in determining whether good faith exists. *In re Marsico*, 2004 WL 97647 (Bankr. D. N.H. Jan. 5, 2004) (analyzing good faith under Chapter 7) (*citing* Justice Potter Stewart's concurrence in *Jacobellis v. State of Ohio*, 378 U.S. 184, 197 (1964)) (Stewart, J., concurring) (Exhibit B).

There are those who take the position that the "good faith filing requirement" which existed under the Bankruptcy Act, does not exist under the Bankruptcy Code. Bankruptcy Act of 1898 (repealed). Pursuant to Section 146 of the Bankruptcy Act, a petition was not filed in good faith if there was no prospect that the debtor would reorganize. *See, e.g., Fid. Assurance Ass'n v. Sims*, 318 U.S. 608 (1943). Congress deliberately eliminated the statutory "good faith filing requirement" when it did not enact the Chapter X language into the new Bankruptcy Code. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 442-43 (1987) ("Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded.")

However, case law in this circuit has implicitly recognized that the good faith filing

5

requirement survived the enactment of the Bankruptcy Code. *Cf. In re Madison Hotel Associates*, 749 F.2d 410 (7th Cir. 1984) (recognizing that "good faith" is a prerequisite to the filing of a Chapter 11 case). While many scholars and courts question whether the "good faith filing requirement" should remain viable, it is clear that the courts in this district continue to apply it.

However, even those courts that recognize its continued viability, continue to struggle with the application of the doctrine. Some courts have attempted to provide an objective framework to support an inherently subjective analysis by putting forth a list of factors to be considered in assessing good faith. *See e.g. In re Little Creek Development Co.*, 779 F.2d 1068, 1072-73 (5th Cir. 1986). At least one court suggests that the good faith requirement may not exist under the current version of Bankruptcy Code. *In re Gulph Woods Corp.*, 84 B.R. 961, 971 (Bankr. E.D. Pa. 1988).

One court has attempted to provide some order to what is best described as intellectual chaos in *In re N.R. Guaranteed Retirement, Inc.*, 112 B.R. 263, 272 (Bankr. N.D. Ill. 1990). In *N.R. Guaranteed*, the court summarized the case law and found at least four separate grounds for assessing whether a debtor met the good faith filing requirement: (i) improper impact upon non-bankruptcy rights; (ii) a newly formed debtor for the express purpose of filing bankruptcy; (iii) ability to reorganize; and (iv) delay to creditors. *Id.*

Because both NOLA and South Beach have existed for some period of time, only three of the four factors need to be reviewed. The "new debtor syndrome" is inapplicable to these facts given that both NOLA and South Beach were formed years ago. However, applying the remaining three factors to the present cases, it is clear that the cases meet the good faith filing requirement and should not be dismissed.

6

1. **The Debtor's bankruptcy cases do not negatively impact upon the creditors' non-bankruptcy rights.**

The first factor is whether the bankruptcy improperly impacts upon non-bankruptcy rights. *Id.* The *N.R. Guaranteed* court concluded that a "truly unnecessary Chapter 11 case imposes improper burdens both on creditors and the bankruptcy system." *Id.*

In the present cases, these burdens do not exist. South Beach's sole creditor cannot take advantage of the NOLs except through a plan of reorganization. Exhibit A. Clearly, the bankruptcy is not a burden to Scattered Corp., rather it is a benefit. Similarly NOLA's bankruptcy does not appear to be a burden on its creditors, but rather a benefit.

NOLA's only active and vocal creditor, Wachovia, has fully litigated its claim against NOLA before a NYSE arbitration. Wachovia obtained modification of NOLA's stay for the express purpose of having the NYSE arbitration panel enter an award. Consequently, the only negative impact may be Wachovia's ability to collect on the award. However, the automatic stay will ensure that NOLA's assets are shared equally among all of its creditors, rather than allowing a single creditor to recover all of the assets for its sole benefit. The bankruptcy will allow Wachovia a convenient forum to satisfy itself that NOLA has truthfully disclosed all of its assets. Wachovia appears willing to accept the inconvenience of the automatic stay in order to avail itself of the discovery provisions of the Bankruptcy Code.

Wachovia has also made it quite clear in other pleadings that it does not view NOLA as its primary source of recovery. Rather, Wachovia has asserted that other entities may somehow share in NOLA's liability. Wachovia seems to welcome NOLA's bankruptcy filing as a convenient forum to consolidate its various claims against NOLA and others, and as a

7

vehicle for discovery. While Wachovia's assertions regarding the liability of third parties are without merit, it is important that it engage in the discovery permitted by the Bankruptcy Code and the Bankruptcy Rules to reach this conclusion for itself.

NOLA's and South Beach's creditors are not negatively impacted by their bankruptcies and, to the extent there is any negative impact, it appears to be insignificant. As the *N.R. Guaranteed* court stated, § 1112(b) should not be applied to grant relief simply because the debtor cannot articulate or convincingly prove its need for bankruptcy. However, in these cases, South Beach and NOLA have both demonstrated the need for their respective bankruptcies. These bankruptcy cases should not be dismissed.

### 2. At this early juncture, both South Beach and NOLA can demonstrate an ability to reorganize.

The second factor seeks to determine if a debtor has an ability to reorganize. In the present cases, both parties have demonstrated an ability to reorganize notwithstanding the significantly different approach required by their different cases. This approach overlaps with § 1112(b)(2), which identifies that one of the factors for finding cause to dismiss a case is the "inability to effectuate a plan." The *N.R. Guaranteed* court stated that there is no reason to consider ability to reorganize simply as one issue bearing on good faith in filing because "inability to effectuate a plan" is itself an independent basis for dismissal. *N.R. Guaranteed*, 112 B.R. at 276.

Nevertheless, South Beach clearly has the ability to effectuate a plan. South Beach's only creditor, Scattered Corp., has every incentive to see that the plan is confirmed, because it is only through such a plan that Scattered Corp. can realize any dividend on its claim. It is this economic best interest which causes Scattered Corp. to voice its support of the plan. As

8

a result, not only is confirmation likely but, with Scattered Corp.'s consent and support, inevitable. Consequently, South Beach's case cannot be dismissed.

As to NOLA, it too could effectuate a plan. However, unlike South Beach's, NOLA's plan would be a liquidating plan of reorganization. While NOLA has the ability to effectuate a plan, much of its ability to do so will depend upon how much NOLA receives from the sale of its assets. In addition, it is difficult to determine whether an impaired class of creditors will vote to accept the plan.

It is not necessary, at this time, to predetermine if South Beach's and NOLA's plans are confirmable, that is for the confirmation process. It would be unfair to South Beach and NOLA to have to demonstrate that their plans are confirmable at this juncture. *In re N.R. Guaranteed*, 112 B.R. at 277. Furthermore, it is generally recognized that the need for a showing of an ability to reorganize is not as high during the four months in which the debtor is given the exclusive right to put together a plan. *See Edgewater Walk Apartments v. MONY Life Ins. Co. of America* 162 B.R. 490 N.D.Ill.,1993 (*citing, with approval, In re Ashgrove Apts. of DeKalb County, Ltd.*, 121 B.R. 752, 756 (Bankr. S.D. Ohio 1990); *see also United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 ("the bankruptcy courts demand less detailed showings during the four months in which the debtor is given the exclusive right to put together a plan").

Therefore, neither South Beach's nor NOLA's bankruptcy case should be dismissed because of a lack of good faith surrounding its ability to confirm a plan of reorganization.

### 3. South Beach and NOLA have not filed these cases with the principal intent to delay creditors.

The final factor – has the bankruptcy been proposed simply to delay creditors – is inapplicable in the present case. Neither South Beach nor NOLA has interposed these bankruptcies for the simple purpose of delay. The only pending prepetition action was the NYSE arbitration against NOLA. However, NOLA did not object to the modification of the stay to permit this tribunal to enter its arbitration award.

As the *N.R. Guaranteed* court noted, unreasonable delay is an independent basis upon which to dismiss a Chapter 11 under § 1112(b)(3) and need not be considered as a factor bearing on good faith. However, whether this Court deems this factor as applicable to the "good faith filing requirement" or views this as a possible basis for dismissing this case, neither South Beach or NOLA have caused a delay which is either unreasonable or prejudicial to other creditors. There appears to be no basis under § 1112(b) to dismiss either of these cases for the "unreasonable delay that is prejudicial to creditors."

## CONCLUSION

For the factors set forth above, the party seeking dismissal bears the burden of proof. *In re N.R. Guaranteed*, 112 B.R. at 273 (movant bears burden of proof that the bankruptcy negatively impacts impact upon the creditors' non-bankruptcy rights); *In re Sheehan*, 58 B.R. 296, 300 (Bankr. D. S.D. 1986) (movant must demonstrate that the debtor is unable to propose a confirmable plan of reorganization); *In re Macon Prestressed Concrete Co.*, 61 B.R. 432, 436-437 (Bankr. M.D. Ga. 1986) (movant bears the burden of proof as to unreasonable delay) *see also In re Bal Harbour Club, Inc.*, 316 F.3d 1192 (11th Cir. 2003) (holding that the party seeking dismissal bears the burden of proof.)

In the present case, the Debtors have demonstrated that these bankruptcies were filed in good faith. Consequently, these cases should remain in Chapter 11.

Respectfully submitted,

**SOUTH BEACH SECURITIES, INC.**

By: /s/ Mark E. Leipold
     One of its proposed Attorneys

**NOLA, LLC**

By: /s/ Mark E. Leipold
     One of its proposed Attorneys

Louis D. Bernstein (I.D. No. 6192379)
Mark E. Leipold (I.D. No. 6194124)
**GOULD & RATNER**
222 N. LaSalle Street, Suite 800
Chicago, Illinois 60601
(312) 236-3003